HORACE A. HEINZE, ET AL. *v.* STATE OF MARYLAND

[No. 37, January Term, 1945.]

614

*Decided April 12, 1945.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, HENDERSON, and MARKELL, JJ.

*Paul B. Mules* for the appellant.

*William H. Maynard, Deputy State's Attorney for Baltimore City,* with whom were *William C. Walsh, Attorney General, J. Edgar Harvey, Assistant Attorney*

*General, J. Bernard Wells, State's Attorney for Baltimore City,* and *Bernard G. Peter, Assistant State's Attorney,* on the brief, for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

Horace A. Heinze and Henry Schaefer, Jr., policemen of Baltimore City, were jointly indicted on two counts: (1) for stealing $20 from Andrew J. Conner, and (2) for receiving $20, knowing the money to have been stolen from Andrew J. Conner. At the trial of the case in the Criminal Court of Baltimore City, Conner, a railroad boilermaker's helper, 18 years old, testified that the two policemen ordered him to stop his automobile on Edmondson Avenue at about 1 A. M. on September 11, 1944; that they demanded his motor vehicle operator's license, and he handed to them his pocketbook containing the license; and that after they had handed it back to him and had started to drive away in the police car, he found that a twenty-dollar bill was missing from his pocketbook. He made a complaint to the Baltimore City Police Department, and both of the officers signed reports positively denying that they had stopped his automobile. However, on September 13 they called at Conner's home and, while denying that they had taken the money, offered to pay him $20 if he would say that he had found the bill in his automobile. Both of the officers admitted that they had made false statements in their reports, but they pleaded not guilty.

In accordance with our common-law procedure, the clerk of the court asked the jury, when they returned from their consultation room at the close of the case, whether they had agreed upon a verdict, and they replied that they had. The clerk asked them who would speak for them, and they said, "The foreman." He then asked the foreman what their verdict was as to Heinze, and the foreman answered, "Guilty." The clerk queried: "Guilty on the first count, not guilty on the second count?" The foreman answered, "Yes." The same questions were asked as to Schaefer, and the foreman gave the same

replies. The clerk then declared that the verdict of the jury was: "Guilty on the first count, not guilty on the second count, as to each defendant, with recommendation of mercy." Immediately the foreman and several other jurors protested that they had not recommended mercy. Accordingly the clerk repeated the question, and after the foreman had answered again, the clerk redeclared the verdict, this time without adding recommendation of mercy. Counsel for the defendants then requested that the jury be polled, and thereupon every juror announced the verdict: "Guilty on the first count, not guilty on the second count, as to each defendant." The defendants then moved that a mistrial be declared, and excepted to the overruling of their motion. After a motion for a new trial was overruled by the Supreme Bench of Baltimore City, the court sentenced each defendant to imprisonment in jail for six months. The defendants moved to strike out the verdict, judgment and sentence, and this motion was likewise overruled.

On this appeal from the judgment, the defendants argue that the clerk influenced the foreman to amend the verdict, and the other jurors repeated the amendment parrot-like without deliberation, and thus the court invaded the province of the jury. It is a fundamental principle that the verdict of a jury in a criminal case has no effect in law until it is recorded and finally accepted by the court. *Commonwealth v. Green,* 302 Mass. 547, 20 N. E. 2d 417; *State v. Di Pietro,* 120 Conn. 537, 181 A. 716. Any member of the jury has the right *sua sponte* to dissent from the verdict as announced by the foreman at any time before it is recorded and affirmed by the jury. If no objection is made by any of the jurors or by the State or the accused, the verdict as announced is the verdict of the whole panel; and it is then the duty of the clerk to record the verdict and have it affirmed by the jury in the presence of the court by calling upon the whole panel to hearken to their verdict as the court has recorded it, and by repeating to them what has been taken down for record. Until the announcement that the

verdict has been recorded, the jury have the right to amend or change any verdict; and when it is so amended it is the real verdict of the jury and it may be properly accepted by the court. *Ford v. State,* 12 Md. 514, 546; *Givens v. State,* 76 Md. 485, 25 A. 689; *Grant v. State,* 33 Fla. 291, 14 So. 757, 23 L. R. A. 723, 731; 23 *C. J. S., Criminal Law,* Sec. 1412.

It is unquestioned that a finding of guilty on two inconsistent counts is invalid. Thus, where a defendant is charged in one count with larceny and in another count with receiving stolen goods, and it plainly appears that the property alleged to have been stolen is that also alleged to have been received, a general verdict of guilty is fatally defective, because in law a thief cannot be guilty of the crime of receiving stolen goods which he himself has stolen, and a guilty receiver of stolen goods cannot himself be the thief, and hence the defendant could not be guilty on both counts. *Novak v. State,* 139 Md. 538, 115 A. 853; *Harris v. State,* 182 Md. 27, 31 A. 2d 609; *Commonwealth v. Haskins,* 128 Mass. 60; 2 *Bishop, New Criminal Procedure,* 2d Ed., Sec. 1015a; *Hochheimer, Criminal Law,* 2d Ed., Sec. 181. In the case at bar the general verdict of guilty, as originally announced by the foreman, was inconsistent in law and consequently was inadequate to support a judgment unless properly corrected.

It is a generally accepted rule that if the jury should return a verdict which is defective in form or substance, it should not be accepted by the trial judge. It is essential for the prompt and efficient administration of justice to prevent defective verdicts from being entered upon the records of the court as well as to ascertain the real intention of the jury in their finding. Where a verdict is ambiguous, inconsistent, unresponsive, or otherwise defective, it is the duty of the trial judge to call the jury's attention to the defect and to direct them to put the verdict in proper form either in the presence of the court or by returning to their consultation room for the purpose of further deliberation. *Ford v. State,*

12 Md. 514, 546; *Hechter v. State*, 94 Md. 429, 443, 50 A. 1041, 56 L. R. A. 457; *State v. Foulds*, 127 N. J. L. 336, 23 A. 2d 895; *Grant v. State*, 33 Fla. 291, 14 So. 757, 23 L. R. A. 723, 735; *Denham v. Commonwealth*, 119 Ky. 508, 84 S. W. 538; *Kuenzli v. State*, 208 Wis. 340, 242 N. W. 147; *United States v. Frankel*, 65 F. 2d 285; 2 *Bishop, New Criminal Procedure*, 2d Ed., Sec. 1004.

If a verdict is defective merely in form, and the meaning of the jury is clear, it is proper for the judge to suggest the correction in the presence of the accused without requiring the jury to return to their room. *State v. Jankowski*, 82 N. J. L. 229, 82 A. 309; *Quinn v. State*, 123 Ind. 59, 23 N. E. 977; *State v. Cary*, 124 Kan. 219, 257 P. 719. When, however, it becomes necessary to amend a verdict in substance, it is the safer practice to send the jury back to their room with instructions as to the corrections that ought to be made, so that they can amend the verdict as they think proper unhindered by the presence and possible influence of others. The law does not permit the judge to suggest the alteration of a verdict in substance. He must not throw the weight of his influence into the deliberations of the jury as to matters exclusively within their province. In *State v. Carrithers*, 79 Kan. 401, 99 P. 614, the Supreme Court of Kansas declared that if a defendant is found guilty of a misdemeanor, the verdict should not be changed so as to find him guilty of a felony, until after the judge explains the mistake to the jury, calls their attention to the instructions defining the several offenses charged, states the correct forms of verdict applicable to any finding they may properly make, and affords them an opportunity to reconsider their verdict. In *State v. Clifton*, 30 La. Ann. 951, the Supreme Court of Louisiana decided that it would be entirely proper for the judge in a criminal case to inform the jury that they have returned a defective verdict and to instruct them as to the form in which they should clothe their verdict, but it would not be proper to ask them the question whether it was their intention to find the accused guilty of the crime charged, and to

record the answer thus elicited as their verdict, for such would be an invasion of the province of the jury, because the question might be construed by the jury as an intimation of the court as to the guilt or innocence of the accused.

However, if the defendant is not prejudiced, the verdict may be amended in substance in open court under the direction of the judge, provided that the jury assent to the verdict as amended. *State v. Burrell,* 120 N. J. L. 277, 199 A. 18; *Burton v. Commonwealth,* 109 Va. 800, 63 S. E. 464; *Pehlman v. State,* 115 Ind. 131, 17 N. E. 270; *Clark, Criminal Procedure,* 2d Ed., 565. If no harm has been suffered by the defendant, the Court of Appeals will go far in sustaining the action of the trial court in correcting a defective verdict in the presence of the jury. *Williams v. Commonwealth,* 153 Va. 987, 151 S. E. 151. Chief Justice Paxson said in a Pennsylvania case: "There was a time in the history of the English criminal law when great crimes were left unpunished because of harmless, technical errors. This greater strictness was perhaps due to the fact that at that period the Criminal Code was especially bloody. Capital punishment was inflicted for very trifling offenses; and, it may be, the judges sought to ameliorate its rigor by holding the crown to the observance of the nicest technicalities. * * * With the advancement of judicial science, and a more enlightened administration of the law, mere technicalities are less regarded, where they work no harm to a defendant." *Appeal of Nicely,* 130 Pa. 261, 18 A. 737, 739.

We accept the general rule, as stated by Justice Holmes, that if a general verdict of guilty is returned by the jury on inconsistent counts, further deliberation is necessary in order that the jury might decide between the two, and the judge cannot "cut the knot by directing a verdict of not guilty upon either." *Commonwealth v. Lowrey,* 158 Mass. 18, 20, 32 N. E. 940, 941. But in this case the judge was not required to "cut the knot" by deciding between the two counts. None of the

evidence produced at the trial related to the charge of receiving stolen money. All of the evidence related to the larceny count. In fact, the punishments prescribed for the two offenses, both of which are misdemeanors, are exactly the same. Under the Maryland Code, any person who shall be convicted of stealing money or chattels under the value of $25, or receiving money or chattels known to be stolen under the value of $25, shall restore the money or chattels or pay its value to the owner thereof, and shall be fined not more than $50 or imprisoned for not more than eighteen months in the House of Correction or jail, or both fined and imprisoned. Code, 1939, Art. 27, Secs. 388, 549. It is obvious that the foreman, in announcing the general verdict of guilty, merely made a mistake in omitting to find the defendants not guilty on the second count. It is undoubtedly true that a modification of a jury's verdict should not be made in open court without the consent of all the jurors after a clear understanding of the change and its effect. But there is nothing in this case to indicate that the jurors did not understand the simple correction of the verdict. On the contrary, the defendants themselves requested a polling of the jury. Of course, a polling of the jury would not cure prejudicial error committed by the judge when he invades the province of the jury; nevertheless, when a jury is polled each juror is called by name and asked the question whether the verdict as delivered by the foreman is his verdict, in order to make sure that all of the jurors concur in the verdict. Each juror is called on to answer for himself in his own language; and while the exact words used by the juror in answering the clerk are not material, the answer clearly indicates the assent of the individual mind to the verdict. *Ford v. State,* 12 Md. 514, 546; *Biscoe v. State,* 68 Md. 294, 12 A. 25; *Commonwealth v. Buccieri,* 153 Pa. 535, 26 A. 228, 235; *Clark, Criminal Procedure,* 2d Ed., 567; *Hochheimer, Criminal Law,* 2d Ed., Sec. 179.

Viewing the verdict in the light of the evidence, we are convinced that the defendants were not prejudiced by

the manner in which the verdict was received. We hold, therefore, that no error was committed by the court in recording the corrected verdict.

*Judgment affirmed with costs.*